# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

PIERRE MARTIN MURPHY,

    Petitioner,

v.                                              Case No. 11-12285

KENNETH T. McKEE,

    Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

Petitioner Pierre Murphy, who is currently incarcerated at the Bellamy Creek Correctional Facility in Ionia County, Michigan, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. In 2008, Petitioner was convicted of armed robbery, Mich. Comp. Laws § 750.529, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b, following a bench trial in the Wayne County Circuit Court. He now claims that he is being held in violation of his constitutional rights because he received ineffective assistance of counsel at trial. Because the Michigan courts' rejection of this claim does not reflect an unreasonable application of clearly established Supreme Court precedent, the court will deny the petition.

## I. BACKGROUND

In the early morning hours of August 5, 2008, a man armed with a handgun robbed a 7-Eleven convenience store in Romulus, Michigan. (Trial Tr. 10, 29-30, Nov. 11, 2008, Dkt. # 5-6.) The clerk at the time, Stevie Stromski, was the sole eyewitness. At Petitioner's bench trial, Stromski testified that, on the night in question, a man about

5'8" or 5'9" tall entered the store wearing a black, short-sleeved shirt and a woman's wig cut into a bob hairstyle. (*Id.* at 11-12.) The man placed a pack of gum, a tan purse, and a gun on the counter and ordered Stromski to put money from the cash register into the purse. (*Id.* at 13.) Stromski complied, and the man left the store with about $200. (*Id.* at 17.) He left behind the pack of gum, from which partial fingerprints were recovered; the police processed the fingerprints but they were too small to analyze. (*Id.* at 56-57.)

Stromski called the police immediately after the robbery. (*Id.* at 17.) Officer Darrin Wright and his partner then arrived on the scene. (*Id.* at 36.) After speaking with Stromski, the police sent out a "BOL" (be on the lookout) with a limited description of the suspect as wearing a wig and carrying a purse. (*Id.* at 37-38.) Petitioner became a suspect after the City of Wayne passed on his name in response to the BOL and Officer Wright remembered encountering him in connection with an unrelated domestic disturbance about two months previously. (*Id.* at 38-40.)

About twelve hours after the robbery, the police had Stromski review two photographic line-ups to see if she could identify the perpetrator. (*Id.* at 32.) Stromski failed to identify the robber in the first line-up, which contained a photograph of Petitioner looking down and away from the camera. (*Id.* at 51-52.) A few minutes later, however, Stromski picked out a different photograph of Petitioner from the second line-up in under a minute. (*Id.* at 52.) Police arrested Petitioner a few hours later. (*Id.* at 54.)

At trial, Petitioner denied his involvement in the robbery and argued that Stromski had misidentified him. (*Id.* at 68.) The trial court disagreed, finding Stromski's identification credible and noting that she had consistently identified Petitioner during

the photographic line-up, the preliminary examination, and the trial. (*Id.* at 77-80.) Based upon this evidence, and the "unique identity feature" that both the robber and Petitioner wore female wigs, the trial court convicted Petitioner. (*Id.* at 80-81.) It sentenced him to eighty-one months to sixteen years for armed robbery with a consecutive, two-year sentence for possession of a firearm during the commission of a felony. (Sentencing Tr. 7, Nov. 25, 2008, Dkt. # 5-7.)

Petitioner appealed his conviction to the Michigan Court of Appeals, where he claimed ineffective assistance of counsel. In part, he argued trial counsel had rendered deficient representation by failing to highlight certain facts that cast doubt on Stromski's identification, namely, that: Stromski had initially described the robber to police as a man in his late thirties, while Petitioner was twenty-five at the time of the robbery; Petitioner has a scar on his left arm that would have been visible to Stromski during the robbery, but she did not mention it to police; the robber had left the scene in a Ford Bronco, but Petitioner neither owned a car nor had a driver's license; and Petitioner was 6'1" tall, which is four to five inches taller than Stromski's estimate of the robber's height. In support of these claims, Petitioner appended his Michigan Department of Corrections profile and police reports on the robbery to his appellate brief and requested a remand to the trial court for an evidentiary hearing under *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973).

The court of appeals denied Petitioner's motion to remand "for failure to persuade the Court of the need for remand at this time." *People v. Murphy*, No. 289562 (Mich. Ct. App. Sept. 3, 2009) (order denying remand), Dkt. # 5-8, at 86. The court of

appeals went on to deny Petitioner's ineffective-assistance claims because they were not apparent in the existing record:

> Defendant next argues that he received ineffective assistance of counsel because his attorney did not highlight differences between the description of the perpetrator and defendant; did not bring out that the perpetrator was scene driving away in a Ford Bronco and that defendant did not own or drive a car and had no driver's license; did not request independent fingerprint testing which, he maintains, would have established his innocence; did not seek enhancement of a video surveillance tape that could have included or excluded him as the robber; and did not challenge the photo lineup arrays. Since there was no evidentiary hearing in this case, review is limited to mistakes apparent on the existing record. *People v. Snider*, 239 Mich. App. 393, 423, 608 N.W.2d 502 (2000). All of these claims rely on documents appended to defendant's brief on appeal with the exception of the failure to challenge the photo arrays.

*People v. Murphy*, No. 289562, 2010 WL 199597, at *2 (Mich. Ct. App. Jan. 21, 2010) (footnote omitted).

The court of appeals also commented on the merits of these claims in a footnote:

> We note that even in the[] documents [attached to his brief on appeal] defendant has failed to establish ineffective assistance. He has not shown that an independent fingerprint analysis or the analysis of the video surveillance tape would have amounted to exculpatory evidence. There is no evidence that the scars on his hand and arm were pronounced. Further, the fact that defendant did not have a driver's license or own a Bronco would not have been significantly exculpatory; he could have nonetheless driven away in one. Moreover, while the discrepancy between the description of defendant's age with his actual age would have been pertinent, we note that the photo array photographs appended to the prosecutor's brief do not indicate that he had a youthful appearance.

*Id.* at *2 n.1.

Petitioner timely sought leave to appeal this ruling to the Michigan Supreme Court, which denied his application on May 25, 2010, "because we are not persuaded that the questions presented should be reviewed by this Court." *People v. Murphy*, 781 N.W.2d 836 (Mich. 2010). On May 24, 2011, Petitioner filed a habeas petition alleging

4

ineffective assistance of trial counsel due to the failure to point out the differences between his physical characteristics and Stromski's description of the robber's height and age, the robber's use of the Bronco to flee the scene, and the fact that Stromski did not tell police that the robber had a scar on his left arm.

## II. STANDARD

The Antiterrorism and Effective Death Penalty Act ("AEDPA") imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [United States Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal

principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. "[T]he state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citation omitted) (citing *Williams*, 529 U.S. at 409). "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997)), "and 'demands that state-court decisions be given the benefit of the doubt,'" *id.* (quoting *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The United States Supreme Court recently held that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported[,] or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so

lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87,

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court"). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 131 S. Ct. at 785. Furthermore, it "does not require citation of [Supreme Court] cases—indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's ruling. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003) and *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002)).

A state court's factual determinations are presumed correct on federal habeas review. 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Id.*; *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, review under § 2254(d)(1) is "limited to the record that was before the

state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

### III.  DISCUSSION

### A.  § 2254(d) and Petitioner's Request for an Evidentiary Hearing

As an initial matter, Petitioner claims that, because the Michigan Court of Appeals denied his request for an evidentiary hearing, his claims of ineffective assistance of counsel were not "adjudicated on the merits" within the meaning of § 2254(d) and thus are not subject to AEDPA's deferential standard of review. Because of this, Petitioner continues, the court may review his claims de novo and is not limited to the state-court record. *See Pinholster*, 131 S. Ct. at 1401. Petitioner requests an evidentiary hearing under § 2254(e)(2) to develop further the factual basis of his claims.

In the past, the Sixth Circuit has held that AEDPA deference does not apply to claims for which the state court rebuffed a petitioner's diligent efforts to develop the factual record. *See Brown v. Smith*, 551 F.3d 424, 428-30 (6th Cir. 2008). In the wake of *Pinholster*, the continued validity of this precedent—and its potential effect on the habeas court's ability to rely upon evidence not considered by the state court—is somewhat in doubt. *See, e.g.*, *McCoy v. Jones*, 463 F. App'x 541, 545 (6th Cir. 2012) ("The Supreme Court's decision in [*Pinholster*] raises serious questions about Brown's continuing vitality."), *petition for cert. filed*, (U.S. May 23, 2012); *Welsh v. Lafler*, 444 F. App'x 844, 849 (6th Cir. 2011). *But see Plummer v. Jackson*, No. 09-2258, 2012 WL 3216779, at *3 (6th Cir. Aug. 8, 2012) (remanding for evidentiary hearing on claim for which petitioner diligently, but unsuccessfully, pursued an evidentiary hearing); *Robinson v. Howes*, 663 F.3d 819, 823 (6th Cir. 2011) (assuming without deciding that

state court properly applied pre-AEDPA standards of review and granted evidentiary hearing based upon *Brown*, notwithstanding *Pinholster*).

Nevertheless, this issue need not detain the court long, as the Michigan Court of Appeals clearly adjudicated Petitioner's claims on the merits. Although, as Petitioner notes, the court of appeals ostensibly limited its review "to mistakes apparent on the existing record," *People v. Murphy*, 2010 WL 199597, at *2, it also opined that the new evidence submitted by Petitioner with his appellate brief failed to establish ineffective assistance, *id.* at *2 n.1. It is this same evidence, primarily the police reports, that Petitioner seeks to introduce in this court. The concerns of federalism and comity underlying AEDPA, *see Harrington*, 131 S. Ct. at 787, dictate that this court analyze under § 2254(d) the court of appeals' alternative holding that, even with the evidence Petitioner sought to introduce through a *Ginther* hearing, his ineffective-assistance claims lacked merit.

### B. Ineffective Assistance of Counsel

Petitioner alleges that his trial counsel's failure to elicit various facts casting doubt on Stromski's identification of him as the 7-Eleven robber violates his Sixth and Fourteenth Amendment right to effective assistance of counsel. In order to establish his claim, Petitioner must demonstrate that his counsel's performance was deficient and that he was in fact prejudiced by that deficiency. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Harrington*, 131 S. Ct. at 788. Petitioner cannot overcome this high level of deference.

9

### *1. Deficient Performance*

The performance of Petitioner's counsel is considered deficient only if he "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted). In making this determination, the court must examine counsel's acts and omissions within the context of all the surrounding circumstances, *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986), and affirmatively entertain the range of possible reasons counsel may have had for proceeding as he did, *Pinholster*, 131 S. Ct. at 1407.

Petitioner first alleges that his trial counsel's representation "fell below an objective standard of reasonableness," *Strickland*, 466 U.S. at 688, due to his failure to highlight the discrepancies between Petitioner's appearance and Stromski's original description of the robber, specifically, that Petitioner was four to five inches taller and ten-odd years younger than Stromski remembered. While Petitioner's case my have been strengthened by his counsel putting these differences into sharper focus at trial, the failure to do so has not "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. Through Stromski's testimony at trial, the judge was made aware of Stromski's original description of the robber's height and he had every opportunity to observe Petitioner's actual height during the trial. Petitioner's counsel may have been betting on this, and

10

could have felt asking Stromski about the discrepancy ran the risk of her expressing further confidence that the Petitioner had in fact been the robber, despite her mistaken approximation of his height.  Petitioner could have made a similar calculation before deciding against asking Stromski about her original guess as to the robber's age.  Petitioner's counsel may have wanted to avoid risking an explanation from Stromski along the lines that the robber's female wig and clothing made approximating height and age more difficult, but that she was nevertheless sure about the robber's identity.

Petitioner also challenges his counsel's decision to avoid discussing Petitioner's scar or his lack of a driver's license.  Even assuming Petitioner's scar is as noticeable as his reliance on it would indicate, his counsel's decision not to reference it does not amount to deficient performance.  Petitioner's counsel could very well have deemed such questioning to be of minimal value to Petitioner's case and likely to draw attention away from more key issues.  Petitioner's counsel may likewise have thought that citing his client's lack of a driver's license might have been an unwarranted distraction.  While, in hindsight, it may seem that these arguments would have been advantageous to Petitioner, counsel could reasonably have made a sound strategic decision not to do so.

Petitioner tries to avoid this result by relying on several cases from other circuits holding that a defense attorney's failure to ferret out discrepancies between a witness's initial description and her eventual trial testimony constituted prejudicially deficient performance. Petitioner relies most heavily on *Berryman v. Morton*, 100 F.3d 1089 (3d Cir. 1996).  There, the witness initially described her three assailants—Berryman (the defendant), Bludson, and Bunch—as about the same height.   In reality "Berryman [was] nearly half a foot taller than Bludson, and half a foot shorter than Bunch.  Bunch, in turn,

tower[ed] over Bludson, as he [was] nearly a full foot taller." *Id.* at 1097. The district court in that case held that counsel's failure to emphasize this glaring hole in the witness's testimony constituted deficient performance, and the Third Circuit deferred to that judgment. The discrepancy in the instant case—amounting to four inches—is not nearly as dramatic, and could potentially be explained away by differences in posture, the clothes or shoes worn by the robber, or even the relative elevation of the floor at various points inside the 7-Eleven. There are any number of strategic reasons Petitioner's counsel may have had for proceeding as he did. Accordingly, the court cannot find that the Michigan Court of Appeals unreasonably applied *Strickland* and its progeny to the facts of Petitioner's case.

### *2. Prejudice*

Even if Petitioner were able to establish that his counsel performed deficiently, he would still need to satisfy the second prong of the *Strickland* analysis by showing that counsel's errors were the 'but for' cause of his conviction. *Strickland*, 466 U.S. at 694. Petitioner has failed to show that the judge would have dismissed Stromski's multiple, consistent identifications of the Petitioner as the robber if Petitioner's counsel had put more emphasis on the facts that he now claims were crucial.

As discussed above, the height difference would have been evident to the trial judge and, as the state court explained, the other circumstances noted do not strongly suggest Petitioner's innocence or persuasively undercut Stromski's identifications. *See People v. Murphy*, 2010 WL 199597, at *2 n.1. The pictures used in the photographic line-ups do not indicate that Petitioner had a particularly youthful appearance; moreover, the trial judge could have concluded that Stromski's over-estimate of

12

Petitioner's age could be explained by the fact that he was wearing a wig. Petitioner's scar, no matter how noticeable under normal circumstances, would not have been a one of the most memorable characteristics of an armed man dressed as he was. Finally, evidence of Petitioner's lack of a driver's license or a (lawfully owned) car has little bearing on whether he was able to obtain a vehicle and drive it. Petitioner has not shown that his claims warrant habeas relief under the doubly deferential standard applicable to the Michigan Court of Appeals' affirmation of his convictions.

## IV.  CERTIFICATE OF APPEALABILITY

Before Petitioner may appeal this decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). In applying this standard, the court must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id.* at 336-37.

Having considered the matter, the court concludes that Petitioner has not made a substantial showing of the denial of his constitutional rights such that his habeas claims

deserve encouragement to proceed further. In the court's view, reasonable jurists could not debate the correctness of either the court's resolution of Petitioner's ineffective-assistance claim. The court declines to issue Petitioner a certificate of appealability.

## V. CONCLUSION

For the reasons stated, IT IS ORDERED that the petition for writ of habeas corpus [Dkt. # 1] is DENIED.

IT IS FURTHER ORDERED that the court DECLINES TO ISSUE a certificate of appealability.

      s/Robert H. Cleland  
      ROBERT H. CLELAND  
      UNITED STATES DISTRICT JUDGE

Dated: September 20, 2012

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, July 16, 2012, by electronic and/or ordinary mail.

      s/Lisa Wagner  
      Case Manager and Deputy Clerk  
      (313) 234-5522